UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLOOMFIELD HILLS COUNTRY CLUB,
BIRMINGHAM COUNTRY CLUB, and          Case No. 15-11290
BYLEN GOLF COMPANY, L.L.C. d/b/a
PINE TRACE GOLF CLUB,                 Honorable Nancy G. Edmunds

    Plaintiffs,

v.

THE TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, PHOENIX
INSURANCE COMPANY, and TRAVELERS
INDEMNITY COMPANY OF AMERICA,

    Defendants.
                                        /

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [36, 37, 38]**

Each of the three Defendant insurers in this matter filed a motion for summary judgment against its corresponding Plaintiff insured (dockets 36, 37, 38). Plaintiffs filed a response (dkt. 54) and Defendants filed corresponding replies.[1] (Dkts. 49, 50, 51). The Court heard this matter on August 17, 2016. Despite Defendants having filed separate motions for summary judgment, their arguments hinge on the admissibility of Plaintiffs' expert witness, Dr. Joseph Vargas, which was resolved in Plaintiffs' favor, therefore the

---

[1] By stipulation and order (dkt. 52), Plaintiffs agreed not to use the testimony, opinion or reports of Dr. Brian Horgan, also a subject of Defendants' motions for summary judgment. Plaintiffs agreed to withdraw their prior response at docket 44 and filed a new response at docket 54. The Court need not address Defendants' arguments relating to Dr. Horgan.

Court addresses all of Defendants' motions for summary judgment herein and on the record.

**I. Background and Facts**

Plaintiffs are three golf courses in metro-Detroit: Bloomfield Hills Country Club ("Bloomfield"), Birmingham Country Club ("Birmingham") and Bylen Golf Company d/b/a Pine Trace Golf Club ("Pine Trace", hereinafter together "Plaintiffs" or "Plaintiff golf courses"). Bloomfield was insured under a policy of insurance issued by Defendant Travelers Property Casualty Company of America. (Statement of Undisputed Material Facts ¶ 3, dkt. 38.) Birmingham was insured under a policy issued by The Phoenix Insurance Company. (Statement of Undisputed Material Facts ¶ 3, dkt. 36.) Pine Trace was insured under a policy issued by Travelers Indemnity Company of America. (Statement of Undisputed Material Facts ¶ 3, dkt. 37.) There is no dispute that the policies were in effect during the 2013-2014 winter, at the time the damage at issue occurred. (Statement of Undisputed Material Facts ¶ 3, dkts. 36, 37, 38.)

Each of the policies included the Eagle 3 Miscellaneous Property Coverage ("Eagle 3 form"), which provided: "We will pay for direct physical loss of or damage to Covered Property caused by or resulting from Covered Cause of Loss." (Eagle 3 Misc. Prop. Coverage § A, dkt. 53-1.) Covered Property includes "Golf Course Greens, Tees, Fairways and Rough," and provides as a Covered Cause of Loss "Weight of snow, ice or sleet." (Eagle 3 Misc. Prop. Coverage § A.3.b(13), dkt. 53-1.) The golf course greens at the Plaintiff golf courses constitute "Covered Property" under the Eagle 3 form. (Second Am. Compl. ¶¶ 18-19; Defs.' Mots. Summ. J. St. of Undisputed Material Facts ¶ 5, dkts. 36, 37, 38.)

Plaintiffs allege that during the winter of 2013-2014, Plaintiff golf courses suffered winter weather and resultant damage or death to the poa anna grass (or "turfgrass") on their greens as follows: Bloomfield suffered damage and/or death to all 18 greens and the putting green, Birmingham suffered damage and/or death to all 18 greens, and Pine Trace suffered damage and/or death to 17 of 18 greens and the putting green. (Second Am. Compl. ¶ 22.)

Plaintiffs allege that "the weight of the snow, ice and/or sleet on the greens damaged and/or killed the poa anna grass." (Second Am. Compl. ¶ 22.) In part, Plaintiffs base their allegations that the weight of the ice killed the turfgrass by prohibiting a gaseous exchange by the turfgrass, leading to anoxia, on the opinion of Plaintiffs' expert, Dr. Joseph M. Vargas Jr., and letters by Dr. Kevin W. Frank.

After they realized the damage to the greens, Plaintiffs submitted claims to Defendants for coverage pursuant to the Eagle 3 form for the winterkill damage to the greens. Defendants each retained Dr. John Kaminski in connection with their investigations of the loss. (Bylen Dep. 100:14-1-1:2, 101:2; Basso Dep. 35:8-36:16, 36:20-37:21; Graczyk Dep. 35:8-36:16, 36:20-37:21.) Defendants ultimately denied coverage to their respective Plaintiff golf course insureds and Plaintiffs filed suit on April 6, 2014. (Dkt. 1.) Plaintiffs brought claims for breach of contract (Count I) and violation of the Uniform Trade Practices Act (Count II). (Second Am. Compl., dkt. 31.) Defendants now each file a motion for summary judgment in this matter. The issues are similar as between Defendants, and Plaintiffs filed a single response to all three.

3

## II. Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sierra Brokerage Servs., Inc.,* 712 F.3d at 327 (citation omitted). Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation and quotations omitted). When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. Analysis

### A. Whether Plaintiffs Can Satisfy Their Burden Of Proof

Plaintiffs' Eagle 3 Miscellaneous Property Coverage form policies are "named peril" or "specific peril" policies, which means that they "provide coverage only for the specific risks enumerated in the policy and exclude all other risks." 7 Couch on Ins. § 101:7. This differs from "All-Risk" policies, which "provide coverage for all risks unless the specific risk is excluded." 7 Couch on Ins. § 101:7. Here, Plaintiffs argue that the damage to their greens was caused by "weight of ice," an exact covered peril for which they paid additional

4

insurance premiums and which is enumerated in the Eagle 3 Miscellaneous Property Coverage form at section A.3.b.(1): "[w]eight of snow, ice or sleet." (Eagle 3 Misc. Property Coverage, Pls.' Resp. Ex. 6.)

"It is the insured who has the burden of proving that his loss falls within a grant of coverage in the policy." *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (citing *Clark v. Hacker*, 76 N.W.2d 806, 809 (Mich. 1956)); *see also* Appleman on Ins. 2d § 192.09 (under "'named peril' coverage, . . . the insured has the burden of proving that any losses were caused by a peril covered by the policy . . . .").

Defendants argue that Plaintiffs cannot satisfy their burden of proof where Plaintiffs identify the bases for their position that the weight of ice caused the damages to the greens as "founded in the opinions of Dr. Rogers, Dr. Vargas, and Dr. Frank -- highly regarded argronomists from the Michigan State University. Plaintiff anticipates using Dr. J.M. Vargas . . . as retained expert[], . . . ." (Birmingham's Responses to Defendant's Interrogatories, dkts. 36-10.) Defendants argue that Drs. Vargas, Rogers and Frank are the only witnesses identified as possibly offering testimony regarding the weight of ice causing the damage to the greens. (Def.'s Mot. Summ. J., dkt. 38 at 12; Def.'s Mot. Summ. J., dkt. 37 at 12.)

### 1. Dr. Joseph Vargas

Defendants argue that without Dr. Joseph Vargas's opinion that the damage to their greens was caused by the weight of ice, Plaintiffs cannot meet their burden. Dr. Vargas states:

> It is my opinion that the damage to the greens at Bloomfield Hills Country Club, Birmingham Country Club and Pine Trace Golf Club that occurred during that winter of 2013-2014 was directly caused by the weight of the ice on the greens prohibiting gaseous exchange with the surface.

5

(Vargas Letter Dec. 16, 2015, Defs.' Mot. Ex. 2, dkt. 39-2.) Dr. Vargas confirmed in his deposition that this was and remains his opinion. (Vargas Dep. 31:18-32:18, Defs.' Mot. Ex. 1, dkt. 39-1.) Dr. Vargas also agreed that he stated this opinion to a reasonable degree of scientific certainty. (Vargas Dep. 33:6-8; dkt. 39-1.)

The Court denied Defendants' motion to exclude the opinion and testimony of Dr. Vargas and has concluded that his opinion and testimony are admissible. Dr. Vargas's opinion and testimony show that a material question of fact exists as to the cause of damage to the greens and summary judgment is not appropriate in this matter.

### 2. Dr. Frank

Defendants argue that Dr. Frank's opinion does not support Plaintiffs' claims that weight played a role in causing the damages to the greens during the 2013-2014 winter. Dr. Frank is identified as a non-retained expert and turfgrass specialist from Michigan State University who consulted with Birmingham and Pine Trace during the 2013-2014 winter.

Dr. Frank wrote a letter to Birmingham dated July 22, 2014, containing the following:

> The complicating factors of winterkill that caused damage this year were many and varied. Ice cover was certainly one of the factors that caused significant damage this year. Due to insurance claims there have been many questions about the weight of ice being a factor in winterkill. I do believe weight of ice is a directly correlated factor in causing winterkill. The weight of ice is directly related to the thickness of ice, and this ultimately affects the health and viability of the turfgrass lying underneath. An ice sheet that is only 0.5 inches thick would have less weight than an ice sheet that is 3 inches thick. Ice sheets that are thicker and therefore weigh more are more likely to cause anoxia (lack of oxygen and accumulation of toxic gases) in turf than are thin ice sheets that may be more porous. Thick/heavy ice sheets effectively seal the turf surface preventing any gas exchange with the atmosphere and eventually causing turfgrass death. I visited Birmingham CC on Feb. 27 and observed ice sheets of 3-4 inches in depth. I believe it is reasonable to conclude that the weight of the ice experienced at Birmingham CC this winter caused the loss of significant turf on its greens.

(Frank letter to Birmingham July 22, 2014, dkt. 54-1, Ex. 8.)

Dr. Frank wrote a letter to Pine Trace dated July 15, 2014, containing the following:

> The complicating factors of winterkill that caused damage this year were many and varied. Ice cover was certainly one of the factors that caused significant damage this year. Due to insurance claims there have been many questions about the weight of ice being a factor in winterkill. <u>I do believe weight of ice can be implicated as a factor in causing winterkill.</u> The weight of ice is directly related to the thickness of ice, and this ultimately affects the health and viability of the turfgrass lying underneath. An ice sheet that is only 0.5 inches thick would have less weight than an ice sheet that is 3 inches thick. Ice sheets that are thicker and therefore weigh more are more likely to cause anoxia (lack of oxygen and accumulation of toxic gases) in turf than are thin ice sheets that may be more porous. Thick/heavy ice sheets effectively seal the turf surface preventing any gas exchange with the atmosphere and eventually causing turfgrass death.

(Frank Letter to Pine Trace July 15, 2014, *provided by Plaintiffs*, dkt. 54-1, Ex. 8 (emphasis added).) The Frank letter to Pine Trace provided by Defendants does not contain the underlined portion, above, and instead states, consistent with the letter to Birmingham, "I do believe weight of ice is a directly correlated factor in causing winterkill." (Frank Letter to Pine Trace July 15, 2014, Def.'s Mot. Summ. J. Ex. R, dkt. 37-18.) It also includes a final sentence: "It is therefore reasonable to conclude that the weight of the ice experienced at Pine Trace Golf Club this winter caused the loss of significant turf on its greens." (*Id.*) Defendants argue that the last sentence of the Pine Trace letter was draft by Pine Trace's owner, Mr. Bylen. An email from Bylen on July 15, 2014, states in part:

> You indicated when we spoke that I should review and suggest changes. I have therefore made several slight changes to the last paragraph and added one affirmative statement at the end. I have done so in an effort to emphasize the correlation between the ice we experienced and its effects on our turf. Please review and let me know if you are comfortable with these amendments. I want you to be comfortable with my suggestions as I certainly do not wish to, put words into your mouth or state things that you do not believe. While I do not believe I have done that, I would appreciated your thoughts and you are of course free to reject any and all of my changes.

(Bylen Email July 15, 2014, dkt. 37-12.) Plaintiffs call this a non-issue, because Dr. Frank later testified that he reviewed the modification, subsequently signed it, and agreed that he could have refused the changes if he wanted to, and in testimony he agreed that he had agreed with it at the time he signed it. (Frank Dep. 61:19-62:7.) The Court agrees with Plaintiffs that this point made by Defendants goes to the weight of the evidence.

Defendants also argue that Dr. Frank's testimony could be read as qualifying his opinions and further argue that Dr. Frank's opinion that there is a correlation between weight of ice and anoxia does not establish a causal relationship between the two. (Def.'s Mot. Summ. J., dkt. 37.)

"Where a complaint pleads facts that are 'merely inconsistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Kim v. Grand Valley State University*, 2012 WL 1032704, at *3 (W.D. Mich. Mar. 27, 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Defendants rely on *Kim v. Grand Valley*, where the court found that the plaintiff repeatedly conflated correlation with causation, by pointing to the defendant's conduct, pointing "to the fact that he is Korean," and concluding "that the conduct must have been discriminatory." *Id.* Both *Kim* and *Craig ex rel. Craig v. Oakwood Hospital*, 684 N.W.2d 296 (Mich. 2004) (another case on which Defendants rely), are distinguishable in that here, Plaintiffs have provided some evidence of causation in the form of opinions that weight of ice was at least some factor in the damage to the turfgrass. Plaintiffs have provided evidence from which a jury could find causation.

Defendants also allege that Dr. Frank's testimony regarding the meaning of his letter is inconsistent with what Dr. Frank told Phoenix claims handler James Wodka. (Def.'s Mot.

Summ. J. 17, dkt. 37.) The arguments raised by Defendants regarding Dr. Frank merely go to the weight of the evidence and are not persuasive in these motions for summary judgment. The Court cannot weigh evidence or make credibility determinations in a motion for summary judgment and must draw all reasonable inferences in favor of the nonmoving Plaintiffs.

### 3. Dr. Trey Rogers

John "Trey" Rogers, Ph.D., was on retainer with Bloomfield Hills and Birmingham golf courses to "fix" the courses. (Rogers Dep. 11:21-22, 12:18-23, dkt. 37-5.) Defendants' argument with respect to Dr. Rogers appears to be that Dr. Rogers's testimony does not support Plaintiffs' position. For example, Defendants cite excerpts from Dr. Rogers's testimony, including that Dr. Rogers agreed that he believed that opining whether the weight of ice caused the damage to the greens was outside the scope of his expertise. (Rogers Dep. 17:9-14.) When asked if he had any involvement in investigating the cause of damage to the greens, Dr. Rogers testified that his advice to the courses "was only how to fix," and that he "did not advise any other matter." (Rogers Dep. 13:3-10.) He agreed that he had not conducted an investigation as to whether it was the weight of ice that caused damage to the greens from the 2013-2014 winter. Dr. Rogers also testified as follows:

> Q. So as to these three golf courses, did you formulate an opinion on whether the weight of ice on the greens at those golf courses caused the damage to the greens from 2013-2014 winter?
>
> . . .
>
> A. I find this a very difficult question to answer, primarily in that do I believe that ice being on the greens for an extended period of time, plus 75 days, contributed to the death of the greens? I absolutely believe that.
>
> Q. But that's not the question.
>
> A. I understand.

> Q. Oh, I get you. I'm sorry. Sorry to interrupt.
>
> A. So then you get to the question of the weight of the ice. This had been the $64 question for a year and a half, so I don't -- and I'm still not positive I know how to answer that question.

(Rogers Dep. 15:16-16:11.) Again, Defendants' arguments go to the weight of the evidence and are not a basis for granting summary judgment in light of the existence of evidence that raises a material question of fact as to the cause of the damage to the greens.

### B. Whether A Reasonable Jury Could Find In Plaintiffs' Favor

As in their motion to exclude Dr. Vargas's opinion and testimony, Defendants make the argument that their witness Dr. Kaminski's report is based on scientific evidence and will explain why the weight of the ice did not cause the damage to the greens. The factors which Defendants raise, for example that Dr. Kaminski toured the Plaintiff golf courses, will go to the weight of the evidence. Further, the fact that Defendants' expert came to a different conclusion about the primary factual issue in this case does not support summary judgment in Defendants' favor. As set forth in the Court's opinion and order denying Defendants' motion to exclude Dr. Vargas, this goes to the weight of Plaintiffs' witnesses' opinions and testimony. This is simply a battle of the experts and illustrates that genuine issues of material fact exist. *See generally In re Gabapentin Patent Litig.*, 503 F.3d 1254 (Fed. Cir. 2007) (where "the parties proffered conflicting expert opinions, based on different evidence and different methods of testing" the court concluded that "genuine issues of material fact exist in the record, and thus that the court erred in granting summary judgment").[2]

---

[2] Because the Court is denying Defendants' motions for summary judgment, it need not reach Defendants' argument with respect to Plaintiffs' Count II for violation of the Uniform

**IV. Conclusion**

For the reasons set forth herein and on the record, the Court DENIES Defendants' Motions for Summary Judgment (docket nos. 36, 37, 38).

**SO ORDERED**.

      s/Nancy G. Edmunds
      Nancy G. Edmunds
      United States District Judge

Dated: August 30, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 30, 2016, by electronic and/or ordinary mail.

      s/Carol J. Bethel
      Case Manager

---

Trade Practices Act ("UTPA") and seeking an award of statutory interest. *See* Mich. Comp. Laws § 500.2006.