UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLOOMFIELD HILLS COUNTRY CLUB,
BIRMINGHAM COUNTRY CLUB, and           Case No. 15-11290
BYLEN GOLF COMPANY, L.L.C. d/b/a
PINE TRACE GOLF CLUB,                  Honorable Nancy G. Edmunds

       Plaintiffs,

v.

THE TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, PHOENIX
INSURANCE COMPANY, and TRAVELERS
INDEMNITY COMPANY OF AMERICA,

       Defendants.
_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION IN LIMINE AS TO DR. KEVIN FRANK [61]**

Defendants bring this motion in limine as to Dr. Kevin Frank. (Docket 61.) Plaintiffs

filed a response (dkt. 65) and Defendants filed a reply (dkt. 68). The Court heard this matter

on October 5, 2016.

**I.     Background and Facts**

This is a first-party property damage claim. Plaintiffs are three golf courses in metro-

Detroit: Bloomfield Hills Country Club ("Bloomfield"), Birmingham Country Club

("Birmingham") and Bylen Golf Company, LLC, d/b/a Pine Trace Golf Club ("Pine Trace";

together "Plaintiffs" or "Plaintiff golf courses"). On April 1, 2013, Defendant Travelers

Property Casualty Company of America, issued a policy of insurance to Bloomfield. On

October 1, 2013, Phoenix Insurance Company issued a policy of insurance to Birmingham.

On January 1, 2013, Travelers Indemnity Company of America issued a policy of insurance to Pine Trace. There is no dispute that the policies were in effect throughout the 2013-2014 winter. Each Plaintiff purchased, at an additional cost, the Eagle 3 Miscellaneous Property Coverage ("Eagle 3 form"), which provided: "We will pay for direct physical loss of or damage to Covered Property caused by or resulting from Covered Cause of Loss." (Eagle 3 Misc. Prop. Coverage § A, dkt. 53-1.) Covered Property includes "Golf Course Greens, Tees, Fairways and Rough," and provides as a Covered Cause of Loss "Weight of snow, ice or sleet." (Eagle 3 Misc. Prop. Coverage § A.3.b(13), dkt. 53-1.)

Plaintiffs allege that during the winter of 2013-2014, thick heavy ice accumulated on the greens at Plaintiff golf courses, allegedly 5 inches thick in some locations. (Photos., Ex. 2, dkt. 53-1.) Plaintiffs allege that the weight of this ice killed the turfgrass by prohibiting a gaseous exchange by the turfgrass, leading to anoxia, as opined by at least one of Plaintiffs' experts.[1]

Plaintiffs submitted claims to Defendants for coverage pursuant to the Eagle 3 form for the winterkill damage to the greens. Defendants denied coverage on the basis that the weight of the ice did not kill the greens. Plaintiffs filed suit on April 6, 2014. (Dkt. 1.) The Court has already denied Defendants' motions for summary judgment and this case is set for trial.

The instant motion involves Plaintiffs' witness Dr. Kevin Frank. Dr. Frank is an associate professor in the Plant, Soil and Microbial Sciences department at Michigan State University. (Defs.' Mot. In Limine as to Dr. Frank 2-3, dkt. 61; Pls.' Resp. 6.) Following

---

[1]Defendants' motion to exclude the report and testimony of Plaintiffs' expert Dr. Joseph M. Vargas Jr. was denied in this Court's order of August 30, 2016. (Dkt. 58.)

damage to the greens from the 2013/2014 winter, Birmingham and Pine Trace retained Dr. Frank to inspect their greens regarding the cause of damage. Bloomfield did not retain Dr. Frank to inspect its greens. (Frank Dep. 12:33-13:21, Defs.' Mot., Ex. 1, dkt. 61-1.) Dr. Frank wrote letters to Pine Trace and Birmingham, dated July 15, 2014, and July 22, 2014, respectively, giving an opinion as to the primary cause of death to the turfgrass and what, if any, role weight of ice played in the winterkill damage.[2] In Plaintiffs' Rule 26 disclosures, served on September 18, 2015, Plaintiffs identified Dr. Frank as follows, under "witness identification":

> 9. Representatives, agents, employees and custodians of records of Michigan State University, including but not limited to Dr. Kevin Frank and Dr. Try Rogers, . . . . It is anticipated these witnesses will testify regarding the damage to Plaintiffs' greens and the cause of that damage being the weight of ice and snow. These witnesses may be called to provide expert opinion testimony regarding these issues.

(Pls.' FRCP Disclosures, Sept. 18, 2105, Pls.' Resp. Ex. 4, dkt. 65-1.) The parties deposed Dr. Frank on March 22, 2016, at which time Dr. Frank was also asked about Bloomfield, as set forth in further detail below.

Defendants seek to exclude or limit certain testimony of Dr. Frank. (Defs.' Mot. 2, dkt. 61.) Despite Plaintiffs' argument to the contrary, this is the first time Defendants have properly moved to exclude or otherwise limit Dr. Frank's testimony, though Defendants mentioned Dr. Frank's testimony and letters in their motion for summary judgment.

---

[2] The letters included the following: as to Pine Trace, "I do believe weight of ice can be implicated as a factor in causing winterkill"; as to Birmingham, "I do believe weight of ice is a directly correlated factor in causing winterkill." (Pls.' Resp. Ex. 3.)

## II.   Analysis

### A. Whether Plaintiffs Properly Disclosed Dr. Frank's Expert Opinion Testimony Pursuant To Rule 26(a)(2)(C)

Defendants argue that Plaintiffs failed to properly disclose Dr. Frank's testimony as a non-retained testifying expert in accordance with Fed. R. Civ. P. 26(a)(2)(C), which provides

(a) Required Disclosures

(2) Disclosure of Expert Testimony

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(I) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26. These disclosures are required per the Court's order, or, absent court order or stipulation, "at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D)(I). Defendants argue that by stipulated order dated November 6, 2015, Plaintiffs' expert disclosures were due on December 20, 2015, by which time Plaintiffs had served copies of expert reports by only Dr. Joseph Vargas and Dr. Brian Horgan. (Dkt. 17.) Defendants argue that Rule 26 disclosure requirements are mandatory and must be strictly enforced. Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed

4

to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

To the extent that Plaintiffs' disclosure of Dr. Frank did not strictly comply with Rule 26(a)(2), such failure is harmless. As Plaintiffs point out, they clearly identified Dr. Frank in their disclosures served on Defendants on September 18, 2015, as well as identifying the subject matter on which he is expected to testify, stating that "it is anticipated these witnesses will testify regarding the damage to Plaintiffs' greens and the cause of that damage being the weight of ice and snow. These witnesses may be called to provide expert opinion testimony regarding these issues." (Pls.' FRCP Disclosures, Sept. 18, 2015, Pls.' Resp. Ex. 4, dkt. 65-1.) Most importantly, Dr. Frank has already been deposed by the parties and at his deposition he stated the facts and opinions to which he would testify, including answering a hypothetical question about the Bloomfield greens. Finally, Defendants themselves identify Dr. Frank as a witness.[3]

This is distinguishable from *Taylor v. Nock*, 2009 WL 117613 (E.D. Mich. Jan. 19, 2009), on which Defendants rely. The *Taylor* plaintiff failed to timely disclose a list of all previous cases in which "the witness testified as an expert at trial or by deposition" in the past 4 years and provided this information less than three weeks prior to the commencement of the trial. *See id.* at *1. The court denied the plaintiff's motion and did not allow the plaintiff to present testimony of this expert witness. *See id.* In *Taylor*, the

---

[3] Defendants in their brief note that "Defendants did properly disclose Dr. Frank as a non-retained testifying expert, and he should be permitted to offer expert opinion testimony on their behalf that the weight of the ice did not cause the damage to Plaintiffs' greens at Birmingham and Pine Trace, if Defendants choose to call him as a witness at trial." (Defs.' Mot. In Limine 4, dkt. 61.)

5

additional information was not made available until less than three weeks before trial and the *Taylor* court had already denied the defendant's earlier motion in limine to exclude the plaintiff's expert's testimony predicated upon the plaintiff's "strict compliance with all of the applicable provisions within Fed.R.Civ.P. 26." *Id.* Here, even if Plaintiffs failed to strictly comply with a Rule 26(a)(2)(C) disclosure as to Dr. Frank, such failure was harmless and no prejudice will arise where the parties have already deposed him.

### B. Whether Dr. Frank May Offer Expert Testimony Regarding Cause of Damage at Bloomfield Hills

Birmingham and Pine Trace consulted with Dr. Frank regarding the cause of damage to their greens in the 2013/2014 winter. Plaintiffs admit in their response that Bloomfield did not retain Dr. Frank to inspect its greens. (Pls.' Resp. 6, dkt. 65.) Therefore, argue Defendants, Dr. Frank has no reliable basis for an opinion regarding the cause of damage to Bloomfield's greens and he should not be allowed to offer expert testimony on that issue. (Defs.' Mot. In Limine 3, dkt. 61.)

Courts considering expert testimony examine admissibility within the context of Federal Rule of Evidence 702.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The United States Supreme Court has established that Rule 702 requires district courts to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597

6

(1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-52 (1999) (expanding *Daubert's* analysis of expert scientific testimony to cover expert testimony based on "technical" and "other specialized knowledge"). Rule 702 "imposes a 'gatekeeping' duty on district courts [to] exclude unreliable and irrelevant evidence." *Meemic Ins. Co. v. Hewlett–Packard Co.*, 717 F.Supp.2d 752, 761 (E.D. Mich. 2010) (Edmunds, J.) (citation omitted); *see also Smelser v. Norfolk So. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (setting forth factors for the court to consider in its gatekeeping role), *abrogated on other grounds by Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir. 1998).

Defendants' argument is that "[b]ecause Dr. Frank did not investigate the cause of the damage to the greens at Bloomfield Hills, any opinion that he would offer at trial on that issue would not satisfy *Daubert's* reliability requirement and should be deemed inadmissible." (Defs.' Mot. In Limine As To Dr. Frank 9, dkt. 61.) Defendants state that "[t]o date, Dr. Frank has not offered any expert opinion regarding the cause of the damage to the greens at Bloomfield Hills." (Defs.' Mot. In Limine As To Dr. Kevin Frank 5, dkt. 61.) Yet Plaintiffs argue that Dr. Frank provided the following opinion as to the Bloomfield greens at his March 22, 2016 deposition:

> . . . . Question: If Bloomfield Hills Golf Course had ice similar to what you see in Exhibit 139 and 140, you would agree with me that it would be (sic) therefore be reasonable to conclude that the weight of the ice experienced at the Bloomfield Hills Country Club that winter caused the loss of significant turfgrass on its greens, when we take the whole report with respect to the thickness and the heaviness and the anoxia that you earlier talked about into account?")
>
> A: Yes. The only caveat would be the duration of ice cover in all those cases, but beyond that, yes.

(Dr. Frank Dep. 73:8-21, Pls.' Resp. Ex. 2, dkt. 65-1.)

Defendants cite the same deposition to argue that Dr. Frank had testified that he was not involved in any investigations of the cause of damage to Bloomfield's greens, and he had not formulated or expressed any opinions about what caused the damage. In his deposition, Dr. Frank stated that he does not recall making a visit to Bloomfield, that it was possible that he talked to their superintendent at a meeting that included golf course superintendents from around the region, but that he does not recall any specific communications with them. (Dr. Frank Dep. 12:23-13:8, dkt. 61-1.) He also does not recall being involved in any investigation into the cause of the damage to the Bloomfield greens, and does not remember writing any letters about the cause of damage to Bloomfield's greens, or formulating or expressing any opinions as to what caused the damage to Bloomfield's greens. (Dr. Frank Dep. 13:10-21.) Further, Bloomfield's superintendent, Daniel Billette confirmed in his deposition that Dr. Frank was not involved with Bloomfield with respect to damage from the 2013/2014 winter. (Billette Dep. 53:6-21.) In its answers to interrogatories, Bloomfield did not identify Dr. Frank when it identified everyone with whom it had consulted about the cause or possible cause of damage to its greens. (Bloomfield's Resp. to Interrog. No. 2, Defs.' Mot. Ex. 3, dkt. 61-3.)

In this Court's opinion and order dated August 30, 2016, regarding Dr. Vargas' testimony, the Court noted that experts are permitted to opine even without firsthand knowledge or observation as long as, "the expert's opinion [has] a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. In the Court's August 2016 opinion and order allowing Dr. Vargas' expert testimony, the Court pointed out the sufficient and numerous facts and data on which Dr. Vargas based his opinion, despite not having observed the golf courses in person. Dr. Frank identifies no similar facts or data

as a basis for his testimony at the deposition regarding Bloomfield. The Court agrees that Dr. Frank's opinion regarding Bloomfield does not satisfy Fed. R. Evid. 702 or *Daubert's* reliability requirement and is inadmissible.

### C.   Whether Dr. Frank May Provide Expert Opinion Testimony That Weight of Ice Caused Damage at Any of Plaintiffs' Golf Courses

Defendants argue that because Dr. Frank described the relationship between the weight of ice and anoxia as a "correlation," his testimony does not satisfy the legal requirement that there be a "causal" relationship and as a result,

> [A]ny expert opinion testimony offered by Dr. Frank at trial regarding the "cause" of the damage to Plaintiffs' greens would not help the trier of fact determine a fact in issue because the fact in issue is the <u>cause</u> of the damage to the greens and not merely a correlation that may exist between the weight of the ice and the damage suffered.

(Defs.' Mot. In Limine As To Dr. Frank 13, dkt. 61.).

Defendants argue that courts in Michigan and the Sixth Circuit have explained that correlation does not satisfy the requirement for a causal relationship. *See generally Craig ex rel. Craig v. Oakwood Hospital*, 684 N.W.2d 296 (Mich. 2004) (arising in a medical malpractice claim the court held that the "statutory and common-law background provided . . . makes it clear that a plaintiff's prima facie case of medical malpractice must draw a causal connection between the defendant's breach of the applicable standard of care and the plaintiff's injuries").

> It is axiomatic in logic and in science that correlation is not causation. This adage counsels that it is error to infer that A causes B from the mere fact that A and B occur together. Given the absence of testimony on causation supplied by Dr. Gabriel, the jury could have found for plaintiff only if it indulged in this logical error-concluding, in effect, that evidence that plaintiff may have sustained a head injury, combined with evidence that plaintiff now has cerebral palsy, leads to the conclusion that the conduct that caused plaintiff's head injury also caused his cerebral palsy.

9

. . . We have long required the plaintiff to show "that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." Where the connection between the defendant's negligent conduct and the plaintiff's injuries is entirely speculative, the plaintiff cannot establish a prima facie case of negligence.

*Craig ex rel. Craig*, 684 N.W.2d at 93.

The cases which Defendants cite are distinguishable in that the courts considered this issue in the context of whether or not the plaintiffs had established a prima facia case, and for example, whether the plaintiff's expert's opinion testimony satisfied the proximate cause element in a medical malpractice claim. *See Kernstock v. U.S.*, 559 Fed. Appx. 428 (6th Cir. 2014). *Craig* gives the example of an expert, Dr. Gatewood, whose testimony "connected defendants' alleged breach of the standard of care to physiological symptoms displayed by plaintiff before his birth" but he "specifically declined to connect these prebirth conditions to the particular injuries for which plaintiff sought compensation" and he had "denied he had the requisite expertise to make the causal linkage and expressly refused to testify to a causal relationship between plaintiff's neurological diseases and his prenatal care." *Craig ex rel. Craig*, 684 N.W.2d at 311. "A mere possibility of such causation is not enough; and when . . . the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Kernstock*, 559 Fed. Appx at 435 (citing *Skinner v. Square D Co.*, 516 N.W.2d 475, 481 (Mich. 1994)). Plaintiffs rely on cases that hold that causation is generally an issue for the trier of fact. *See generally Nichols v. Dobler*, 655 N.W.2d 787, 788 (Mich. App. 2002) ("Generally, proximate cause is a factual issue to be decided by the trier of fact. However, if reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the court should decide the issue as a matter of law.").

10

The cases illustrate that Dr. Frank should be allowed to testify, even where his opinion is that "weight of ice can be implicated as a factor" or "weight of ice is a directly correlated factor in causing winterkill." At this point, Plaintiffs have provided some evidence of causation in the form of opinions that weight of ice was at least a factor in the damage to the turfgrass. The Court will allow this testimony.

## III.   CONCLUSION

For the reasons set forth herein and on the record, the Court DENIES in part and GRANTS in part Defendants' motion in limine as to Dr. Frank (dkt. 61):

1.   Dr. Frank is allowed to testify and his testimony is admissible as to the Pine Trace and Birmingham golf courses;

2.   Dr. Frank's testimony is not admissible as to the Bloomfield golf course.


**SO ORDERED**.

s/Nancy G. Edmunds_____
Nancy G. Edmunds
United States District Judge


Dated:  October 11, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 11, 2016, by electronic and/or ordinary mail.

s/Carol J. Bethel_____
Case Manager